## THE LABRADOR.[1]

### McCALDIN *et al. v.* THE LABRADOR.

*(District Court, E. D. New York.   July 12, 1889.)*

SALVAGE—COMPENSATION.

The steam-ship L., worth $200,000, and having cargo valued at $750,000 aboard, soon after her arrival from sea, in New York bay, caught fire. The steam-boat R. was employed by the agents of the steam-ship in New York to go to her aid.' At the same time the M., a steam-tug, valued at $25,000, which was towing near the place where the steam-ship was lying, abandoned her tow, went to the L., and began to pump water into her. The steamer was then beached, and in the course of an hour and a half the fire was extinguished. After this the M. went to New York to procure a suction-pump, with which she returned and pumped out the steamer. The latter was not seriously damaged. The fire was in an iron compartment, far removed from the cargo, and would probably have been confined to that compartment without the aid of the M. The owners of the steamer paid the R. $4,000. *Held*, that the M. should recover $4,500 as salvage.

In Admiralty.

Action by James McCaldin and others for salvage compensation.

*Butler, Stillman & Hubbard,* for the owners, and *Sheppard & Osborne,* for the officers and crew, of the William McCaldin.

*Coudert Bros.,* for claimant.

BENEDICT, J.   This is an action on the part of the owners and crew of the steam-tug William McCaldin to recover salvage compensation for services rendered to the steam-ship Labrador. The defense set up in the answer is that the services rendered were mere work and labor, and not entitled to salvage compensation. The steam-ship Labrador, a passenger vessel of the value of $200,000, having on board a cargo of the value of $750,000, and freight of the value of $9,500, soon after her arrival at quarantine from sea caught fire. The fire originated in the drying-room. All efforts on the part of those on board the steamer proving insufficient to control the fire, the steam-boat Rescue, a fire-boat belonging to the Merritt Wrecking Company, was employed by telegraph from the agents in New York city to go to the steam-ship. About the same time the fire was discovered by the tug William McCaldin, a new steam-tug, equipped with powerful pumps for throwing water, valued at $25,000, at the time up in the Kill von Kull engaged in towing a ship to sea. The McCaldin at once abandoned her tow, and proceeded to the port side of the Labrador. Her aid was accepted, and she commenced to throw water into the burning compartment. The Rescue had already arrived on the starboard side. It had been determined by the officers of the steamer to beach the steamer, and when the McCaldin arrived the steamer was proceeding towards Owl's Head for that purpose, with the Rescue along-side throwing water on the fire. On arrival at Owl's Head

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

she was at once beached, and in course of an hour and a half the fire was extinguished, water being up to that time thrown upon the fire by the Rescue, the McCaldin, and at the last by the Fletcher, as well as by pumps, some of which were worked by hand and some by the donkey-engine belonging to the steam-ship. The ship's company on board numbered 144 men. When the fire was extinguished the Rescue departed. The McCaldin also stopped pumping, and went back to New York to procure a suction-hose, with which she returned, and pumped out of the steamer the water which had been thrown in her to extinguish the fire. At high water the steamer came off the mud, and proceeded to her berth, and thereafter went to sea on her return voyage without repairs. The fire, which, as already stated, broke out in the drying-room, was confined to the iron compartment in which it originated. In that compartment it did considerable damage, destroying the wood-work, and otherwise injuring the vessel. It is impossible, under this state of facts, to sustain the defense set up in the answer, that the service rendered by the McCaldin was not salvage, but mere work and labor. The position was abandoned at the hearing. The only question discussed was as to the amount of salvage proper to be awarded. The great difference in opinion as to the amount that should be awarded arises from a difference of opinion as to the extent of the peril to which the steam-ship and her valuable cargo were exposed. Upon this point I do not think sufficient importance has been attached by the advocate for the libelants to the undisputed fact that the fire occurred in an iron compartment of an iron steam-ship, far removed from the cargo, to which compartment the fire would in all human probability have been confined without the aid of the McCaldin. The steamer herself was in peril, but there was no serious peril of the total loss of the cargo by fire. It was to the danger by fire that the efforts of the McCaldin were directed. On the other hand, the evidence makes it plain that the opinion now firmly expressed by the officers of the steamer that the fire was thoroughly under control before the McCaldin arrived, and that the steam-ship was in no peril, was not the opinion entertained by them at the time. The protest made a day or two after the fire shows this, where it says:

"The fire continuing to increase, fearing a fatal issue, I accepted the services of two fire-boats having powerful engines, and I resolved to run the vessel aground on a mud-bank which was near us. As soon as we had ascertained the extent of the fire, the boats had been put out, ready to take off the passengers, who had been gathered aft. * * * From 7 o'clock in the morning all danger had completely disappeared, being vigorously attacked by the appliances on board, and with the assistance of the fire-boats was extinguished."

The early hour in the morning at which the fire occurred is not without importance, and renders it highly probable that, if the McCaldin had refused her aid, the Rescue would have been left to cope with the fire alone for two or three hours. The services of the Rescue have been rewarded by the owners of the steamer by the payment of $4,000. In view of all the circumstances, I am unable to award salvage compensation to the McCaldin upon the theory that by her efforts property

of the value of nearly a million dollars was saved from destruction. Neither am I able to agree with the advocate for the steamer, who, to quote from Lord STOWELL in a salvage case, "has taken matters quite at the freezing point," when he insists that $500 would be a liberal award to the McCaldin. The payment by the owners of the steamer to the Rescue of the sum of $4,000 for services no more important than those rendered by the McCaldin, and which perhaps could not be held to be services the compensation for which was dependent on success, is wholly inconsistent with the argument now made in her behalf. I am unable to see any ground upon which to award to the McCaldin a less sum than was paid to the Rescue. As I view the case she is entitled to something more. Taking all the circumstances into consideration, it is my opinion that $4,500 should be awarded to the McCaldin for her services on the occasion in question, and she must also recover her costs.